[Crim. No. 2179.   First Dist., Div. One.   July 10, 1941.]

THE PEOPLE, Respondent, v. PERCY G. FLUMERFELT
et al., Appellants.

Leo A. Sullivan and William A. Sullivan for Appellants.

Earl Warren, Attorney General, David K. Lener, Deputy Attorney General, Ralph E. Hoyt, District Attorney, and George E. Perkins, Deputy District Attorney, for Respondent.

WARD, J.—Appellants were indicted for grand theft and violation of the Corporate Securities Act, and a jury trial resulted in their conviction of one or more of the acts charged. They have taken a joint appeal from the judgment. There were nine counts in the indictment, four charging them with grand theft, and five with violation of the Corporate Securities Act. Appellants Flumerfelt and Ardelle were convicted on all nine counts; appellant King on all but the fifth (one of the counts of grand theft), and Fletcher on four counts of violation of the Corporate Securities Act. Sentences were imposed against each, to run concurrently; and in addition, as to Flumerfelt and Ardelle, to run concurrently with a term of imprisonment imposed upon each for a similar offense in

another county. (*People* v. *Flumerfelt*, 35 Cal. App. (2d) 495 [96 Pac. (2d) 190].)

██ It is contended that the evidence is insufficient to sustain the verdicts or support the judgments upon each count; that certain instructions on conspiracy were prejudicial error and that the appellants were not accorded a fair and impartial trial by reason of the admission of evidence concerning other transactions which they claim were not connected with the offenses charged.

The ground of appeal, that the appellants did not conspire to do anything unlawful and that it was error to present conspiracy instructions to the jury, must be based upon the claimed insufficiency of the evidence to show a conspiracy, as no objection is made to the form of the instructions thereon. If the evidence is sufficient to show appellants guilty of the unlawful acts alleged in the indictment upon which each was found guilty, and if the evidence is also sufficient to show that they were acting in concert and agreement in such acts performed, then this contention will need no further consideration.

The facts are as follows: Flumerfelt and Ardelle, operating as a partnership under the name of Ardelle-Flumerfelt Syndicate, were interested in a machine claimed to be a gold recovery machine, used to salvage any remaining gold in mine dumps or tailings. The evidence indicates that certain recovery was accomplished, but, contrary to the representations of these two, there was apparently nothing unusual, distinctive or secret about the machine, nor did they have a patent thereon. These appellants, together with an attorney, one John M. Cartwright, conceived a plan of using the machine to exploit the public through the organization of a corporation. In consideration of the transfer of the machine to such corporation, appellants King and Cartwright agreed to secure sufficient funds to acquire a mining dump near Angels Camp to be operated by the corporation. All of the parties were to receive "promotion stock" share and share alike, Ardelle and Flumerfelt to retain control of the corporation through a voting trust. Subsequently Fletcher became a party to the scheme through appellant King, in whose share of the promotion stock he was to participate. In accordance with their agreement, in May, 1937, Cartwright and King

entered into a contract with one Steffa to purchase the Angels Camp mining dump for $10,000, but this contract was later rescinded because of Steffa's inability to convey title to the property. During the same month, Cartwright went to Oregon with the intention of purchasing a mining property for the corporation for the sum of $30,000 with an added $5,000 as secret compensation to be paid the attorney for the trustees of the mine in payment of his services in the matter. A down payment was made and some preliminary work performed, but no further payments were forthcoming and the trustees repossessed the property. Cartwright finally withdrew from the organization, and was not joined as a defendant herein, although appellants contend that his culpability was greater than theirs.

In the meantime, articles of incorporation were filed for an organization to be known as the American Metals Recovery Corporation. The five directors thereof included the nephew of appellant Ardelle, the wives of King, Fletcher and Cartwright, each under her maiden name, and one of the complaining witnesses in this case, who, at a meeting called for the organization of the corporation, was elected president thereof. It appears from the record that during this period appellants Ardelle and Flumerfelt were having some difficulty in connection with "some Mexican gold brick transaction" and were under investigation by the federal authorities and the state Corporation Commissioner, for which reason it was thought inadvisable to use their names in connection with the new corporation.

The sale to the public of the stock in the corporation was camouflaged by pretended personal loans from investors. In return for an amount advanced, the investor received King's personal promissory note, also a promise of two shares of stock, in the corporation to be formed, for every dollar invested. At the same time, the investor signed a document, retained by the corporation, in which he declared himself about to become associated with others for the purpose of forming the American Metals Recovery Corporation, and agreeing to advance the designated sum of money to help finance its organization, and to take its corporate note for the amount when the incorporation should have been completed. Fantastic statements were made to the prospective investors—some, it is true, relating to future events—and

promises of financial returns as high as two hundred per cent a month. It was also represented that appellants had a right to sell stock; that certain of them owned mine dump properties and that large amounts of gold had been extracted from other locations by the proposed method. All of these statements were untrue. Although certain ''deals'' for the acquisition of such properties were in process of negotiation, they were never completed and no permit to sell stock was ever obtained from the corporation commissioner or even applied for. When all other representations failed to induce the parties to invest, a demonstration of the machine was presented. One of the appellants made a statement to the chief of police of Palm Springs as follows: '' . . . no patent could be obtained. The principle of the machine was so simple they could fool anyone who did not know the basic principles of physics. To the average person, he said, the machine was a mechanical mystery, when as a matter of fact, only a vacuum cleaner motor was needed for the bottom part to force the air through a cloth to set up a vibration.'' The representations relating to the future were interwoven with false statements of the present and the past. The appellants agreed by means of concerted action to defraud the investors. The conspiracy instructions were proper and the evidence upholds the verdicts of conviction.

There is more apparent substance in appellants' claim that the admission of evidence of other business transactions and promotion ventures of Flumerfelt and Ardelle was prejudicial to the rights of all appellants to a fair and impartial trial; but even the force of this argument dissolves and disappears after a thorough study of the record. The briefs indicate considerable admission of such evidence. In *People* v. *Vertrees,* 169 Cal. 404, 412 [146 Pac. 890], the court said: ''The general rule is that the prosecution is not only forbidden to prove another crime but may not introduce evidence designed merely to degrade and prejudice the defendant before the jury.'' However, reviewing courts may not reverse a judgment of conviction unless there appears to have been a miscarriage of justice.

It is claimed that appellant Ardelle was interrogated relative to a $15,000 investment made by one of the complainants herein in another of her projects, namely, Gold Acres

Dredging Company. The pretended success of the last named company was used as a sales argument to prospective investors in the corporation here involved. It was therefore proper to show the true financial condition of that company, and knowledge by the appellants as to the necessity of procuring from the corporation commissioner a permit to sell stock. Assuming that there was only a far fetched connection between the present venture and the Gold Acres company, still no particular injury seems to have resulted to appellants from the admission of this evidence.

The assignment of error most worthy of consideration is that appellant Ardelle was interrogated regarding an investigation by the United States postal authorities of her activities in the Mexican gold transaction. It was improper to question her relative to an "investigation" as distinguished from a conviction of a felony. Objection to this line of questioning was sustained and the jury instructed generally not to consider for any purpose an offer of evidence not admitted. Appellants contend that "Although the learned trial court sustained objections to this latter line of questioning, nonetheless irreparable harm had been done to this defendant which no admonition from the bench could repair." In this respect, however, appellants Ardelle and Flumerfelt themselves introduced evidence that they had been convicted of a crime. In *People* v. *Flumerfelt, supra*, it appears that the charge of grand theft there alleged had to do with the purchase and sale of gold in Mexico, and that as the outgrowth of convictions in that case two of the appellants herein were actually serving time when the present case was tried. While the interrogation was improper, under all of the circumstances it does not appear that any of appellants were prejudiced thereby.

[3b] The evidence in the present case, unlike that of *People* v. *Braun*, 14 Cal. (2d) 1 [92 Pac. (2d) 402], where it did not unerringly point to appellants' guilt, is amply sufficient to prove the guilt of each of the appellants herein, and in the face of such evidence it does not appear that any of them were substantially injured.

The orders and judgments are and each of them is affirmed.

Peters, P. J., and Knight, J., concurred.